**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

SANDRA ANDELO,

    Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC,

    Defendant.

_____/

**COMPLAINT**
**JURY TRIAL DEMAND**

COMES NOW Plaintiff, Sandra Andelo (hereinafter "Plaintiff"), by and through undersigned counsel, and brings this cause of action against Defendant, Equifax Information Services, LLC (hereinafter "Defendant" or "Equifax"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

**PRELIMINARY STATEMENT**

1.    This is an action alleging Defendant violated the FCRA by inaccurately reporting Plaintiff as "deceased" and thereby failing to follow policies and procedures to ensure the maximum possible accuracy of the consumer reports it produces.

2. The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

3. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" *See* Consumer Financial Protection Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

4. Plaintiff seeks entry of judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees. *See* 15 U.S.C. §§ 1681n and 1681o.

## **JURISDICTION, VENUE, AND PARTIES**

5. Jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

7. Venue is proper in this District as Plaintiff is a natural person and a resident of Miami-Dade County, Florida; the violations described herein occurred in this District; and Defendant transacts business within this District.

8. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant is a foreign profit corporation with its principal place of business located at 1550 Peachtree Street, NW H-46, Atlanta, GA 30309, and whose registered agent in the State of Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

10. Defendant is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f), as Defendant is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

11. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

12. Sometime in early 2025, Plaintiff was alerted by one of her credit monitoring services that she was being reported as "deceased" on her consumer reports.

13. Upon further review of her Equifax consumer report, Plaintiff observed that Defendant was incorrectly reporting her as "deceased" with regard to an account with non-party, Best Egg. Plaintiff also observed that Defendant was reporting her credit score as zero (0).

14. Defendant had good reason to know that Plaintiff was not deceased. For example, Defendant was aware that Plaintiff was making payments for her open lines of credit during the relevant time period.

15. Despite this, Defendant willingly chose to continue reporting that Plaintiff was deceased even though Defendant knew or had reason to know she was alive and well.

16. During the relevant time period, Defendant published inaccurate information about Plaintiff to third parties. *See Pedro v. Equifax, Inc.*, 868 F. 3d 1275, 1280 (11th Cir. 2017) (stating the reporting of inaccurate information about the plaintiff to a credit monitoring service resulted in a concrete injury).

17. As a direct and proximate result of the action and/or inaction of Defendant, Plaintiff has experienced injury, including, but not limited to: (i) reduction of her credit score to zero; (ii) wasted time attempting to resolve Defendant's error; (iii) worry, frustration, embarrassment, fear, and other emotional distress; (iv) apprehensiveness to apply for credit; (v) denial of the opportunity to obtain or use credit; and (vi) defamation as Defendant published inaccurate information to third party entities.

## COUNT I
### Negligent violation of 15 U.S.C. § 1681e(b)

18. Plaintiff re-alleges and re-incorporates all of the foregoing paragraphs as if fully stated herein.

19. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

20. Despite Defendant believing that Plaintiff was deceased, it published her consumer report to third parties. Moreover, Defendant has records of timely payments on her open accounts.

21. The FCRA requires that Defendant must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

22. The FCRA requires that Defendant must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." *See* 15 U.S.C. §§ 1681e(a) & 1681b. Defendant, despite having access to the Social Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

23. Defendant places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

24. Defendant does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing

that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

25. Defendant does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

26. Indeed, Defendant employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

27. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

28. Once a "deceased" mark is placed upon a consumer's report, Defendant will not calculate and will not provide a credit score for that consumer.

29. Defendant has received and documented thousands of disputes from consumers complaining that Defendant's consumer reports have them erroneously marked as "deceased."

30. Nevertheless, Defendant employs no procedures which assure that a consumer marked as "deceased" on Defendant's reports is, in fact, deceased.

31. Defendant has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

32. Nor does Defendant employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

33. For years after a consumer's actual death, Defendant will continue to sell for profit credit reports about that consumer.

34. Defendant will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Defendant – meaning that nobody is continuing to buy those reports.

35. Defendant charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

36. Defendant profits from the sale of reports of the deceased.

37. Defendant has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

38. Defendant knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Defendant to be a common and major source of identity theft.

39. Defendant warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

40. Defendant has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

41. Indeed, Defendant sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

42. For consumers who are deceased, there exists no permissible purpose under the FCRA for Defendant to ever sell their credit reports, absent a court order.

43. Defendant knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

44. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of

their agency or employment, and under the direct supervision and control of Defendant.

45. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

46. The conduct, action and/or inaction of Defendant was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 USC § 1681o.

47. Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 USC § 1681o.

48. As a direct and proximate result of the action and/or inaction of Defendant, Plaintiff has experienced injury, including, but not limited to: (i) reduction of her credit score to zero; (ii) wasted time attempting to resolve Defendant's error; (iii) worry, frustration, embarrassment, fear, and other emotional distress; (iv) apprehensiveness to apply for credit; (v) denial of the opportunity to obtain or use credit; and (vi) defamation as Defendant published inaccurate information to third party entities.

WHEREFORE, Plaintiff respectfully requests that this Court award actual damages against Defendant; award Plaintiff her attorneys' fees and costs; award pre-

judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

## COUNT II
### Willful Violation of 15 U.S.C. § 1681e(b)

49. Plaintiff re-alleges and re-incorporates all of the foregoing paragraphs as if fully stated herein.

50. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

51. Despite Defendant believing that Plaintiff was dead, it published her credit report to furnishers. Moreover, Defendant has records of timely payments on her open accounts.

52. The FCRA requires that Defendant must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

53. The FCRA requires that Defendant must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b. Defendant, despite having access to the Social

Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

54. Defendant places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

55. Defendant does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

56. Defendant does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

57. Indeed, Defendant employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

58. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

59. Once a "deceased" mark is placed upon a consumer's report, Defendant will not calculate and will not provide a credit score for that consumer.

60. Defendant has received and documented thousands of disputes from consumers complaining that Defendant's credit reports have them erroneously marked as "deceased."

61. Nevertheless, Defendant employs no procedures which assure that a consumer marked as "deceased" on Defendant's reports is, in fact, deceased.

62. Defendant has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

63. Nor does Defendant employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

64. For years after a consumer's actual death, Defendant will continue to sell for profit credit reports about that consumer.

65. Defendant will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Defendant – meaning that nobody is continuing to buy those reports.

66. Defendant charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

67. Defendant profits from the sale of reports of the deceased.

68. Defendant has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

69. Defendant knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Defendant to be a common and major source of identity theft.

70. Defendant warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

71. Defendant has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

72. Indeed, Defendant sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

73. For consumers who are deceased, there exists no permissible purpose under the FCRA for Defendant to ever sell their credit reports, absent a court order.

74. Defendant knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

75. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

76. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

77. The conduct, action and/or inaction of Defendant was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.

78. Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 USC § 1681n.

79. As a direct and proximate result of the action and/or inaction of Defendant, Plaintiff has experienced injury, including, but not limited to: (i)

reduction of her credit score to zero; (ii) wasted time attempting to resolve Defendant's error; (iii) worry, frustration, embarrassment, fear, and other emotional distress; (iv) apprehensiveness to apply for credit; (v) denial of the opportunity to obtain or use credit; and (vi) defamation as Defendant published inaccurate information to third party entities.

WHEREFORE, Plaintiff respectfully requests that this Court award actual, statutory, and punitive damages against Defendant; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory, compensatory, and punitive damages against Defendant; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

Respectfully submitted,

/s/ *Christopher Legg*
Christopher W. Legg, Esq.
Florida Bar #: 0044460

>8965 Sandy Crest Lane
>Boynton Beach, FL 33473
>Office: 954-962-2333
>Chris@theconsumerlawyers.com